**SO ORDERED.**

**SIGNED this 15 day of July, 2013.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| RANDY MARTIN HOWARD,<br>MILDRED JACOBS HOWARD, | CHAPTER 7<br>CASE NUMBER: 12-02634-8-RDD |
|     Debtors | |
| RALPH HODGE CONSTRUCTION<br>COMPANY, | ADVERSARY PROCEEDING<br>NUMBER: 12-00131-8-RDD |
|     Plaintiff | |
|   v. | |
| RANDY MARTIN HOWARD, | |
|     Defendant | |

**ORDER ON ADVERSARY COMPLAINT**

Pending before the Court is the Adversary Complaint filed by Ralph Hodge Construction Company (the "Complaint") on June 28, 2012 and the Answer to Complaint filed by Randy Martin Howard on August 3, 2012 (the "Answer"). The Court conducted a trial on the Complaint and Answer in Wilson, North Carolina on May 16, 2013.

## BACKGROUND

**I.    Facts**

Randy and Mildred Howard (the "Debtors") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on April 3, 2012. The Court entered a discharge in the Debtors' case on July 2, 2012. Prior to the entry of discharge, Ralph Hodge Construction Company (the "Plaintiff") filed the Complaint objecting to the dischargeabilty of debts owed by the Debtors pursuant to 11 U.S.C. § 523(a)(2)(A) and seeking damages for fraud, conversion, and unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 against Randy Martin Howard (the "Defendant"). The Plaintiff filed proof of claim number 8 for an unsecured claim in the amount of $128,250.00 on October 25, 2012. Subsequently, the Chapter 7 Trustee objected to proof of claim number 8 on the basis that the debts complained of were incurred by Electrical Services, Limited, ("ESL") a corporation owned by the Debtors and the Debtors were not personally liable for the debt. The Plaintiff asserts the viability of proof of claim number 8 rests on the ability to prove the claims alleged in the Complaint.

The Plaintiff is a corporation with a principal place of business in Wilson, North Carolina. The Plaintiff provides general construction contractor services on public and private construction projects. The Plaintiff entered into a contract with the Greenville Utilities Commission for the construction of Sterling Pointe Regional Pump Station and Pipelines (the "Project"). To complete the electrical work on the Project, the Plaintiff entered into a subcontract with ESL to provide labor and materials as a subcontractor (the "Subcontract"). ESL was a corporation owned and operated by the Debtors but has since dissolved. Prior to dissolution of ESL, the Defendant served as the corporation's registered agent and vice president. The Defendant also held the electrician's license under which ESL operated. The agreed upon price for all work to be performed under the

Subcontract was not to exceed $780,750.00. Under the terms of the Subcontract, ESL was to submit an executed Application for Payment stating the work or materials invoiced and the Plaintiff was to remit payment to ESL within seven (7) days of receipt of payment by the Plaintiff from the Project's owner. The Subcontract also provided that all payments were subject to a 5% retainage fee pending the Greenville Utilities Commission's final approval of the Project.

Prior to beginning work on the Project, ESL contracted with Electric Supply Company of North Carolina, Inc. ("Electric Supply") to supply electrical wire to be used on the Project. To complete the purchase, ESL submitted a purchase order to Electric Supply indicating the amount of wire desired. Electric Supply then submitted an invoice for the amount of wire and a "pick ticket," or delivery receipt, showing the amount of wire delivered. The understood procedure for payment of work completed or supplies ordered was for ESL to submit a properly executed Application for Payment indicating the work performed or materials purchased.[1] ESL submitted an invoice and Application and Certification for Payment to the Plaintiff on January 12, 2012 (the "Payment Application") for the wire ESL ordered from Electric Supply. The amount invoiced in the Payment Application was $135,000.00 for wire to be stored by the Plaintiff, less the retainage of $6,750.00, for the total amount of $128,250.00 due by February 11, 2012. Pl.'s Ex. 2, 3.

Attached to the Payment Application, as proof of materials ordered, the Defendant submitted an invoice from Electric Supply to ESL dated December 22, 2011 with a total invoice amount of

---

[1] The Subcontract states:

"All applications for payment shall be on a properly executed Application for Payment form showing the Subcontractor's business address, telephone number, Vendor number, and Project number. The application must state exactly what work and materials are being invoiced."

Pl.'s Ex. 1.

$144,470.35, representing the total purchase price plus state and county sales tax (the "ESL Invoice"). Pl.'s Ex. 3. Attached to the Payment Application was an Affidavit of Lien Waiver executed by the Defendant indicating that as of January 12, 2013, ESL "paid (or shall, promptly upon Affiant's receipt of the Payment, pay) all amounts due" from ESL to all other entities furnishing materials with respect to the Project. Pl.'s Ex. 4. The Payment Application also included a state and county sales tax statement, showing a break down of the amount of state and county sales taxes due for the purchase of the wire (the "Tax Statement").[2] The amount of state sales tax due on the purchase of the wire was $6,428.42. Pl.'s Ex. 3. The amount of county sales tax due on the purchase of the wire was $2,706.70. Pl.'s Ex. 3. The purpose of the Tax Statement was to insure that all applicable state and county sales and use taxes due on materials and services were properly paid.

Based on the Payment Application and the attached documentation, upon receipt of the funds from the Project's owner, the Plaintiff delivered a check in the amount of $128,250.00 to ESL. Pl.'s Ex. 5. The Plaintiff dated the check March 6, 2012, the same date the Plaintiff received the funds from the Project owner. ESL negotiated the check on March 12, 2012. However, ESL failed to use the funds to pay the invoice from Electric Supply.

Kenneth Scholl, vice president of the Plaintiff, testified that because the Project was for a public entity, the Plaintiff was required to obtain a payment bond on the Project. The purpose was to insure the payment of any subcontractors and material suppliers on the Project. The Plaintiff obtained the payment bond through Great American Insurance Company and executed an indemnity

---

[2] The Defendant signed the Tax Statement under notary seal, certifying the "vendors were paid sales tax upon purchases of materials during the period covered by the construction estimate, and the property upon which such taxes were paid was or will be used in the performance of this contract." Pl.'s Ex. 3.

4

agreement guaranteeing payment on any claims paid out by the surety under the bond. Upon ESL's failure to pay Electric Supply, Electric Supply filed a claim against the payment bond in the amount of $94,122.18 for the wire delivered on the Project. Pl.'s Ex. 8. Mr. Scholl stated that the Plaintiff did not learn that ESL failed to pay Electric Supply until Electric Supply filed the claim against the payment bond. Mr. Scholl testified that the Plaintiff and Electric Supply settled the claim for approximately $86,377.89. As such, the Plaintiff effectively paid for the wire it received twice, one payment to ESL in the amount of $128,250.00 and a second payment to Electric Supply in the amount of $86,377.89, based on ESL's failure to remit payment to Electric Supply.

The Defendant testified that ESL received the $128,250.00 check from the Plaintiff on March 6, 2012. The Defendant stated that he understood the funds were to be used to pay Electric Supply for the materials provided for the Project but that ESL did not pay Electric Supply. The Defendant testified ESL was experiencing financial difficulties at the time and the funds were instead used to pay other debts, including employee payroll, payroll taxes, and expenses for other construction projects. According to the Defendant, ESL was owed on several projects and believed at the time it submitted the invoice and Payment Application to the Plaintiff that it would be financially sound and able to pay Electric Supply. However, as ESL's financial condition worsened, it did not have sufficient funds to continue operations and make the payment to Electric Supply. The Defendant stated that ESL generally used the funds it had on hand to pay what debts it could prior to its downfall and dissolution.

The Plaintiff alleges four (4) causes of action against the Defendant, including fraud, conversion, unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1, and objection to dischargeabilty pursuant to 11 U.S.C. § 523(a)(2)(A). The Plaintiff argues that ESL, by and through the Defendant, submitted a fraudulent invoice as the basis for the Payment Application and

certified the Payment Application to induce the Plaintiff into paying the full amount of the invoice without any intent to use the funds to pay Electric Supply. The Plaintiff alleges that these actions constitute unfair and deceptive trade practices prohibited by N.C. Gen. Stat. § 75-1.1. Further, by exercising unauthorized dominion and control over the funds, the Plaintiff alleges the Defendant is liable for conversion. Finally, based on the fraudulent representations or actual fraud, the Plaintiff alleges the Defendant should be denied a discharge of the Plaintiff's debts pursuant to § 523(a)(2)(A).

## II.     Allegations of Fraud

### A.     Fraudulent Certifications Made in the Payment Application

The Plaintiff alleges the Defendant should be held liable for the full amount of the $128,250.00 based on several fraudulent certifications made by the Defendant in the Payment Application. First, the Plaintiff refers to language in the Payment Application by which the Defendant certifies that to the best of his

> knowledge, information and belief the Work covered by the [Payment Application] has been completed in accordance with the [Subcontract], that all amounts have been paid by [ESL] for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

Pl.'s Ex. 3. The Plaintiff questions whether the invoice amount submitted in the Payment Application was the correct amount due based on the $94,122.18 amount Electric Supply sought in its claim against the payment bond. As such, the Plaintiff asserts the Defendant's certification was false in that it did not accurately reflect the amount due and that the Plaintiff relied on the certification in remitting payment to ESL.

Next, the Plaintiff refers to the Tax Statement, in which the Defendant certified that "vendors were paid sales tax upon purchases of materials during the period covered by the construction

estimate, and the property upon which such taxes were paid was or will be used in the performance of this contract." Pl.'s Ex. 3. The Tax Statement was signed under notary seal, notarized by Susan Heath, the former office manager for ESL. However, the Defendant and Mrs. Heath testified that at the time the Defendant certified the Tax Statement, both had knowledge that the state or county sales taxes had not been paid by ESL. According to Mrs. Heath, the Defendant was aware that all taxes had not been paid, but he signed the certification on the Tax Statement regardless because signing the certification was necessary for ESL to be paid. Mr. Scholl testified that prior to issuing the check to ESL, the Plaintiff reviewed the Payment Application and relied on the Defendant's certifications that all taxes were paid and that all payments to suppliers would be promptly made. As such, the Plaintiff argues that by signing the certification on the Tax Statement, the Defendant made a false statement that he intended for the Plaintiff to rely on and the Plaintiff did, justifiably, rely on that statement to its detriment.

Finally, the Plaintiff references the Affidavit of Waiver of Liens, which states that as of January 12, 2012, ESL "paid (or shall, promptly upon Affiant's receipt of the Payment, pay) all amounts due" from ESL to all other entities furnishing materials with respect to the Project. Pl.'s Ex. 4. The Defendant executed the Affidavit of Waiver of Liens under notary seal. The Plaintiff asserts that it relied on the lien waiver in remitting payment to ESL and did so reasonably and justifiably under the belief that ESL would promptly pay Electric Supply upon receipt of payment.

The Defendant testified that he was aware that he hadn't paid the sales taxes at the time he signed the certification but he signed it because he knew he would not get paid otherwise. Further, the Defendant testified that at the time he made all the certifications in the documents included in the Payment Application he fully intended to pay Electric Supply and that it was not until later that he ran out of funds and could not. The Defendant asserts there is insufficient evidence to find that

7

his actions rise to the level of actual fraud. Further, the Defendant argues that should the Court find the Defendant is liable for actual fraud, the Plaintiff's damages should be limited to the amount it justifiably relied on the ESL Invoice. As the actual amount the Plaintiff paid Electric Supply was $86,377.89 and the Plaintiff paid ESL $128,250.00, the extent the Plaintiff justifiably relied on any statements of the Defendant should be the difference between those two.

**B.     Submitting a Fraudulent Invoice with the Payment Application**

After comparing the ESL Invoice to Electric Supply's original invoices, the Plaintiff began to question the authenticity of the ESL Invoice. Pl.'s Ex. 3, 8. The ESL Invoice, which purports to be a copy of the invoice Electric Supply sent to ESL, is labeled invoice number 1006958140 and is dated 12/22/2011, 15:57:51. Pl.'s Ex. 3. The invoice was for order number 1079748. Pl.'s Ex. 3. The invoice has a subtotal of $135,335.22 with the total amount due, including sales tax, of $144,470.35. Pl.'s Ex. 3. Plaintiff's Exhibit 8 contains several invoices made available by Electric Supply under subpoena. Plaintiff's Exhibit 8 also contains an invoice labeled with invoice number 1006958140 and is dated 12/22/2011, 15:57:51. The invoice references order number 1079748, which reflects an amount due of $70,758.71.[3] Based on these inconsistencies, the Plaintiff asserts that the ESL Invoice submitted with the Payment Application is fraudulent and was generated by the Defendant and/or ESL with the intent of inducing the Plaintiff to make a payment in a larger amount than the actual invoiced amount for the wire. Greg Whitley, manager at Electric Supply, testified that he had no knowledge of the ESL Invoice contained in Plaintiff's Exhibit 3 and stated that the

---

[3] In addition to having an identical invoice number, date, time, and order number, the ESL Invoice has other suspicious characteristics. For instance, the ESL Invoice runs two (2) pages, but the caption with the invoice number on the top of the second page states it is "Page 1 of 1." Pl.'s Ex. 3. Additionally, the formatting between the ESL Invoice and the invoice submitted by Electric Supply appears to be different as the Electric Supply invoice contains different categories of information.

invoice did not match any invoice produced by Electric Supply under subpoena. However, Mr. Whitley did verify that the fax number contained on the ESL Invoice belonged to Electric Supply. In addition, Mr. Scholl testified that it appeared the unit prices in the ESL Invoice differed both from the unit prices in the original purchase order and the invoice provided by Electric Supply.

In response to the allegations, Charles Barnes, the previous vice president of operations at ESL and the party responsible for preparing payment applications, testified the invoices he prepared were received directly from Electric Supply via fax. Mr. Barnes stated that generally he did not discuss the payment applications with the Defendant prior to submission and that he had no intent to submit a fraudulent payment application. Mrs. Heath also testified that she normally prepared documents for the Defendant to sign and to her knowledge there was nothing fraudulent about the invoice submitted with the Payment Application. The Defendant testified that he had no reason to question whether the ESL Invoice was accurate and at no time did he intend to make a false representation or defraud the Plaintiff.

## DISCUSSION

**I.   Fraud**

To successfully recover for a claim of fraud, a plaintiff must prove the following elements: "'(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (1974)).

The Court finds there is sufficient evidence for a finding of fraud in the case at hand based on the Defendant's certifications that (1) the amount due was proper as stated in the Payment

9

Application; (2) all state and county sales taxes were paid; and (3) upon receipt of payment from the Plaintiff, the Defendant would pay all amounts due to Electric Supply, as stated in the Affidavit of Waiver of Liens. In so certifying, the Defendant made false representations concerning the amount due, whether the sales taxes were paid, and his intent to promptly remit payment to Electric Supply.

The Defendant testified that at the time he made the certifications, he believed ESL would have sufficient cash flow to make payments to all of his creditors and that it wasn't until its business essentially dissolved that ESL used the funds to pay creditors other than Electric Supply. Regardless of the Defendant's stated intent, the Court finds the Defendant made the certifications in the Payment Application with the intent to elicit payment from the Plaintiff and upon receipt of payment, used the funds for purposes other than those described in the Subcontract and certified in the Payment Application.

Further, the Defendant admitted that he knew at the time of making the certifications that the state and county sales taxes had not been paid. The Defendant stated he knew the Plaintiff would not pay him if not for his certification that all taxes were paid. Finally, the Plaintiff relied on the certifications to its detriment, resulting in payment to the Defendant and payment to Electric Supply for the same goods.

Additionally, the Plaintiff has proven by a preponderance of the evidence that the Defendant fraudulently produced an invoice in excess of the actual amount owed to Electric Supply. While the Defendant testified neither he nor any ESL employee altered the invoice, the disparities existing between the ESL Invoice and the invoice provided by Electric Supply cannot be explained otherwise.

As a result of the Defendant's certifications and the fraudulent invoice, the Plaintiff paid for the wire twice as it made a payment to ESL in the amount of $128,250.00 and then again to Electric

Supply in the amount of $86,377.89 based on the claim against the payment bond, for which the Plaintiff was liable. As such, the Court finds the Defendant's certifications contained false representations and were made with the intent to deceive, which resulted in damage to the Plaintiff.

## II.    Objection Discharge

Section 523(a)(2)(A) provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor for any debt,

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). The applicability of an exception to discharge is construed "narrowly 'to protect the purpose of providing debtors a fresh start.'" *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 2007)). "A plain reading of the subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit." *Id*.

"A creditor seeking to exempt a debt from discharge must establish all of the elements of fraud – '(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of the damages.'" *Fulcher v. Cooper (In re Cooper)*, No. 09-00035-8-JRL at 4 (Bankr. E.D.N.C. Dec. 3, 2009) (quoting *Nunnery v. Rountree*, 478 F.3d at 218)). Of the most difficult elements to prove is the intent to deceive. Case law in the Eastern District suggests that

> [u]nder a § 523(a)(2)(A) analysis: "[A] debtor will be found to have acted with the requisite intent to defraud under § 523(a)(2)(A) when, at the time the transaction

11

occurred, it is established that the debtor, for [] personal gain, knowingly mislead [sic] the investor as to a material fact concerning the [debt]."

*Wilson v. Wall-McMahel (In re Wall-McMahel)*, No. 09-00231-8-JRL, 2010 WL 3744301, at *7 (Bankr. E.D.N.C. Sept. 16, 2010) (quoting *White v. Sigmon*, 128 Fed. Appx. 994, 998 (4th Cir. 2005)).

After finding by the preponderance of evidence that the Defendant is liable for fraud, the Court finds the Defendant knowingly misled the Plaintiff as to material facts for personal gain. Accordingly, the Court finds the debt owed by the Defendant to the Plaintiff based on funds paid under the Subcontract but not disbursed to Electric Supply is non-dischargeable pursuant to § 523(a)(2)(A).

**III.     Unfair and Deceptive Trade Practices and Conversion**

Having found the Defendant liable to the Plaintiff for fraud and the debt $128,250.00 owed to the Plaintiff non-dischargeable pursuant to § 523(a)(2)(A), the Court finds no reason to consider the Plaintiff's claims for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 and conversion and such claims are **DISMISSED**.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court finds the Defendant liable for fraud and the debt owed to the Plaintiff to be non-dischargeable pursuant to § 525(a)(2)(A) in the amount of $128,250.00, representing the damages to the Plaintiff based the funds tendered to ESL. The Plaintiff is entitled to damages in this amount based on double payment for the wire it received from Electric Supply.[4]

---

[4] The Plaintiff received value (materials) in exchange for the $86,377.89 it paid to Electric Supply for the wire. Therefore, the Plaintiff is only entitled to a judgment in the amount of its damages from the transaction with ESL to the extent of $128,250.00. Further, in the Complaint for fraud, the Plaintiff sought damages only to the extent of $128,250.00.

The Clerk of Court is directed to enter judgment in favor of the Plaintiff.  Further the Objection to Claim No. 8, Claim of Ralph Hodge Construction Company, filed by the Chapter 7 Trustee is **DENIED**.

    **SO ORDERED.**

**END OF DOCUMENT**